**[Cite as *State v. Mauss*, 2025-Ohio-870.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Sylvania                      Court of Appeals No.  L-23-1302

        Appellee                                        Trial Court No.  CRB023000148

v.

Danielle Mauss                                          **DECISION AND JUDGMENT**

        Appellant                                       Decided:  March 14, 2025

* * * * *

Jeffrey Lingo, for appellee.

Samuel E. Gold, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a bench trial, the defendant-appellant, Danielle Mauss, was convicted of "adulteration of food," a misdemeanor of the first degree and sentenced to three days in jail by the Sylvania Municipal Court.  On appeal, Mauss challenges the legal sufficiency and weight of the State's evidence.  For the reasons set forth below, we affirm.

## I. Background

{¶ 2} On January 18, 2023, Mauss was working as a nurse for Divine Nursing Rehabilitation of Sylvania ("Divine") in Sylvania, Ohio. It is undisputed that, while at work that day, Mauss put hand sanitizer into a beverage belonging to her co-worker and fellow-nurse, D.P. The incident occurred after D.P. placed a newly opened can and Styrofoam cup, both containing "Monster" energy drink, on the nurse's station. Mauss put hand sanitizer into both, while D.P. was elsewhere tending to patients. When D.P. returned and sipped from her drink, she knew immediately that it did not taste "right" and reported it to the building administrator.

{¶ 3} The administrator reviewed video footage from Divine's security system, which was later played at Mauss's trial. In the first clip, beginning at 10:40 a.m., Mauss is shown entering the nurse's station and picking up a bottle of hand sanitizer on a high countertop, to the left of a printer. After grabbing the sanitizer, Mauss sidestepped to the other side of the printer, and pumped sanitizer in D.P.'s Monster can and Styrofoam cup.

{¶ 4} In the next clip, Mauss is seated at the nurse's station, with the Styrofoam cup and can still on the counter. At 10:52 a.m., D.P. joins Mauss and takes a sip from the Styrofoam cup. After taking a sip, D.P. appears to study the contents of the cup and then places it back on the counter. A minute later, D.P. takes a sip from the can, while Mauss is shown inspecting the Styrofoam cup. Next, D.P. takes a second sip from the can, which she appeared to spit out and then places both the can and cup into the trash.

2

{¶ 5} After reviewing the video, Divine's administrator contacted the Sylvania Township Police. Later that day, police gathered a sample from the can and cup and placed them into "two clear containers," that were later provided to the Lucas County Coroner's office for testing.

{¶ 6} Initially, Mauss denied that she had done anything to D.P.'s beverage, even when confronted with the video. After Mauss failed to show up at Divine for a planned meeting with police a few days later, Detective Sergeant Lee Scott McKinney contacted her. Mauss told McKinney that she was no longer working at Divine and declined to discuss the incident.

{¶ 7} On January 27, 2023, Mauss was charged with violating R.C. 3716.11 ("Adulteration of food"), a misdemeanor of the first degree, and a trial was held on September 18, 2023.

{¶ 8} The state called three witnesses. D.P. testified first, alongside the video replay of the incident. Next, Detective McKinney testified regarding the State's investigation and measures to secure the beverage samples. Finally, Robyn Shinaver, the chief toxicologist at the coroner's office, testified. Shinaver was responsible for testing the two samples. According to her, each sample tested positive for the presence of ethanol alcohol, which is a common component in hand sanitizer. The record also includes photographs of the brand of sanitizer used by Divine, called "GelRite," which indicates that it contains 65% alcohol as its "primary component."

3

**{¶ 9}** The trial court found Mauss guilty and convicted her as charged. Following a presentence investigation, it sentenced her to serve 180 days in jail. It suspended all but three (3) of those days. The court also imposed a one-year term of probation and imposed a $150 fine. Mauss appeals and raises the following assignment of error:

> FIRST ASSIGNMENT OF ERROR: The trial court erred by finding Appellant guilty; as the prosecution did not prove all elements of the underlying offense, and the manifest weight of the evidence does not support a conviction.

## II. Law and Analysis

**{¶ 10}** Mauss claims that her conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. We address her sufficiency argument first.

**{¶ 11}** Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-

4

8448, ¶ 13.  This requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 12} R.C. 3716.11 ("Adulteration of food") provides, in relevant part, that

No person shall do either of the following, knowing or having reasonable cause to believe that any person may suffer physical harm or be seriously inconvenienced or annoyed thereby:

(A) Place a pin, needle, razor blade, glass, laxative, drug of abuse, or other harmful or hazardous object or substance in any food or confection.

{¶ 13} In this case, the state argued that Mauss violated R.C. 3716.11 by placing a "harmful or hazardous" substance—hand sanitizer—into D.P.'s beverage, knowing or having reasonable cause to believe that she may suffer physical harm or be seriously inconvenienced or annoyed thereby.

{¶ 14} Mauss makes a very limited argument on appeal regarding the sufficiency of the state's evidence.  That is, Mauss admits that she put hand sanitizer into D.P.'s beverage *and* that she acted "knowingly."   She does not argue that D.P.'s beverage was not a "food or confection" under the statute, and she does not dispute that the hand sanitizer—which contained 65% ethanol alcohol, a warning label stating that it was "not meant to be a consumed product," and which the deputy coroner testified is "toxic" if consumed in a large enough quantity— was a "harmful or hazardous substance." *See State v. Venditti,* 134 Ohio App. 3d 326, 329 (9th Dist.1999) (a "harmful or hazardous

substance" under R.C. 3716.11 is "physically harmful if ingested in a particular quantity or in a particular manner" but "not necessarily deadly in and of [itself].").

{¶ 15} We therefore limit our analysis to Mauss's sole argument regarding sufficiency, which is that there is no evidence that Mauss knew or had reasonable cause to believe that D.P. "may suffer physical harm or be seriously inconvenienced or annoyed" when she sabotaged D.P.'s drink. Mauss claims that this "essential element [is] missing" because D.P. experienced "no actual harm." Mauss relies principally on the fact that D.P. required "no medical treatment" and suffered "no long-term health complications" from drinking the sanitizer-spiked beverage.

{¶ 16} The statute, however, does not require the victim to suffer actual harm—it is sufficient if the defendant knew or had reason to believe that the victim "*may* suffer physical harm or be seriously inconvenienced or annoyed [by the placement of a harmful or hazardous substance.]" Here, the coroner testified that the primary substance in the sanitizer, ethanol alcohol, *may* be toxic—i.e., cause "physical harm"—if consumed in a large enough quantity.

{¶ 17} Moreover, there was evidence that D.P. *was* seriously annoyed by Mauss's actions. Black's Law Dictionary defines the term "annoy" as to "disturb or irritate, especially by continued or repeated acts; to weary or trouble; to irk; to offend." (Black's Law Dictionary, Sixth Ed.). D.P. testified that after she took a drink of her beverages and "noticed [that] something was in it," she felt "shocked" and questioned "who would do that?" Indeed, even Mauss admits that her actions caused D.P. to become "clearly irate"

6

and "incensed." It was up to the factfinder to determine whether Mauss should have reasonably expected D.P. to have this reaction from drinking a beverage that—unbeknownst to her—had been laced with hand sanitizer.

{¶ 18} In sum, viewing the evidence in the light most favorable to the State, we find that a rational finder of fact could find that the essential elements of the offense were proven beyond a reasonable doubt. *State v. Jordan*, 2023-Ohio-3800, ¶ 16, citing *State v. Dean*, 2015-Ohio-4347, ¶ 150, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4.

{¶ 19} Mauss also challenges her conviction on the basis that it is against the manifest weight of the evidence. However, she does not make any substantive arguments in support of that portion of her assignment of error that challenges manifest weight. Instead, she summarily argues "the trial court erred when finding the Appellant guilty based on the State's inability to prove all elements of the underlying offense, and as a result, the jury's verdict was against the manifest weight of the evidence presented." We will not construct, and then analyze, a manifest-weight argument on her behalf. *See State v. Laws*, 2021-Ohio-166, ¶ 32 (3d Dist.) (declining to construct and then resolve a manifest-weight argument where defendant's manifest weight argument was nothing more than a restatement of his earlier sufficiency-of-the-evidence argument). Moreover, we note that "[a] conviction is not against the manifest weight of the evidence merely

7

because the [finder of fact] believed the prosecution testimony." *State v. Dean,* 2018-Ohio-1740, ¶ 44 (6th Dist.).

**{¶ 20}** Accordingly, we find Mauss's assignment of error not well-taken.

### III. Conclusion

**{¶ 21}** We find Mauss's sole assignment of error not well-taken, and the May 1, 2024 judgment of the Sylvania Municipal Court is affirmed.  Mauss is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.           _____
                                              JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J.           _____
CONCUR.                                               JUDGE

_____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.